IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

ANTHONY GRIFFIN,

                Petitioner,

    vs.

RAYMOND COVENY, Superintendent,
Elmira Correctional Facility,[1]

              Respondent.

No. 9:19-cv-01495-JKS

MEMORANDUM DECISION

      Anthony Griffin, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Griffin is in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and incarcerated at Attica Correctional Facility. Respondent has answered the Petition, and Griffin has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

      On October 28, 2009, Griffin, along with co-defendants Jason Kelley, Darron Phillips, and Justin White, was subsequently charged with two counts of first-degree burglary, first-degree robbery, second-degree robbery, second-degree assault, third-degree criminal possession of a weapon, two counts of second-degree intimidating a victim or witness, endangering the welfare of a child, and fourth-degree conspiracy. The indictment also charged Griffin individually with second-degree criminal possession of a controlled substance, third-degree

---

[1]     Raymond Coveny, Superintendent, Elmira Correctional Facility, is substituted for Joseph Noeth, Superintendent, Attica Correctional Facility. Fed. R. Civ. P. 25(c).

criminal possession of a controlled substance, two counts of second-degree criminal contempt, and making a punishable false written statement.  The charges stemmed from several incidents in June and July 2009 where Griffin ordered several of his gang members to commit a home invasion at the home of his estranged wife.

Prior to trial, Griffin moved to sever the charges relating to the July 24 home invasion from the trial on the other counts because the menacing, contempt, and drugs charges would unduly prejudice Griffin's trial on the home invasion charges.  The People opposed, arguing that the counts were joinable because they were all based upon the same criminal transaction.  The court determined that the offenses were properly joined as they were "inexplicably woven," and each offense would be material and admissible to the others.  The court concluded that severing the offenses would "sanitize any possible motive Griffin would have to conspire with anyone to have this home invasion," but stated that it would provide a limiting instruction to the jury concerning the separate consideration of each of the counts.

The court also held a pre-trial *Huntley*[2]/*Mapp*[3] hearing to determine the admissibility of Griffin's statements and evidence seized by police.  At the hearing, Officer Sean Davis testified that he was dispatched on a domestic-related incident to the home of the parents of Griffin's estranged wife.  The wife informed Davis that Griffin had physically assaulted her, and he could now be found sleeping at their home.  Davis took the wife home, where she granted law enforcement access to arrest Griffin.  According to Officer Davis, upon his arrest Griffin hit the

---

[2]     *See People v. Huntley*, 204 N.E.2d 179 (N.Y. 1965) (a shorthand reference to the hearing held in New York on a challenge to the admissibility of statements made to law enforcement personnel).

[3]     *See Mapp v. Ohio*, 367 U.S. 643 (1961) (a short-hand reference to excluding evidence obtained as a result of an unconstitutional search and seizure).

wife with a pillow and threw his keys at her.  Two days later, Officer Davis received a call to respond to the home because she found in Griffin's vehicle a substance she believed to be drugs. The wife signed a consent to search form, and Officer Davis found multiple clear plastic baggies with a whitish/yellowish substance inside, which, based on his experience, Davis believed to be crack cocaine.  Officer Davis asked Griffin to come to the police station, and provided him with his *Miranda* rights when he arrived.  According to Officer Davis, Griffin acknowledged that he understood and waived his rights, and Officer Davis took a statement from Griffin.  Officer Davis believed that Griffin was being untruthful in his statement and consequently arrested him for criminal contempt.  Griffin then admitted he had lied and said he wished to give another statement.  Griffin was then released.  At the conclusion of the hearing, the court denied Griffin's motions to suppress the crack cocaine recovered from his vehicle and his statements to law enforcement.

After rejecting a plea offer, Griffin proceeded to trial.  The jury found Griffin guilty as charged.  At sentencing, Griffin pled guilty to a drug charge in an unrelated pending indictment. The court sentenced Griffin to an aggregate term of 50 years' imprisonment, to be followed by 5 years of post-release supervision.

Through counsel, Griffin appealed his conviction, arguing that: 1) the trial court abused its discretion in failing to sever the counts of the indictment; 2) he was denied a fair trial because the trial court did not *sua sponte* reopen the suppression hearing following Investigator Gallup's trial testimony admitting that he threatened to arrest Griffin's wife if Griffin did not cooperate; 3) the trial court improperly allowed evidence of sexual offenses against Griffin's wife that his co-conspirators committed even though Griffin had not been charged with those crimes; 4) the

evidence was legally insufficient as to the burglary, robbery, assault, criminal possession of a

weapon, criminal solicitation, endangering the welfare of a child, intimidating a witness,

conspiracy and menacing counts; 5) his conviction was against the weight of the evidence for the

same counts and two drug counts; 6) counsel was ineffective for a number of reasons; 7) the

prosecutor engaged in misconduct that deprived Griffin of a fair trial; 8) the cumulative effect of

the trial error denied Griffin of his right to a fair trial; and 9) his sentence was harsh and

excessive.  In a reasoned opinion, the Appellate Division of the New York Supreme Court

modified the judgment of conviction by reversing as not supported by legally sufficient evidence

Griffin's convictions for criminal possession of a weapon and intimidating a victim or witness.

*People v. Griffin*, 975 N.Y.S.2d 306, 309 (N.Y. App. Div. 2013).  The appellate court

unanimously affirmed the judgment in all other respects.  *Id.*  Griffin filed a counseled

application seeking leave to appeal to the New York Court of Appeals, raising only some of the

grounds unsuccessfully presented to the Appellate Division.  The Court of Appeals summarily

denied leave on July 28, 2014.  *People v. Griffin*, 17 N.E.3d 505, 505 (N.Y. 2014).

Griffin then filed a *pro se* motion for a writ of error *coram nobis* raising two ineffective

assistance of appellate claims, neither of which are raised in the instant petition ("2014 *Coram

Nobis* Motion").  The Appellate Division denied the motion without comment on June 13, 2014,

*People v. Griffin*, 987 N.Y.S.2d 590, 590 (N.Y. App. Div. 2014), and the Court of Appeals

summarily denied leave to appeal, *People v. Griffin*, 21 N.E.3d 572, 572 (N.Y. 2014).

Again proceeding *pro se*, Griffin moved in County Court to vacate his conviction

pursuant to New York Criminal Procedure Law ("CPL") § 440.10.  In that motion, Griffin raised

the following claims that appear in the instant Petition: 1) the prosecutor committed misconduct

by presenting false evidence and perjured testimony; and 2) newly-discovered evidence in the form of a sworn statement from Justin White, one of the participants in the home invasion, disavowing Griffin's involvement established Griffin's actual innocence.  In a reasoned unpublished opinion issued on July 25, 2019, County Court denied the motion in its entirety, concluding that the prosecution had not presented false evidence or testimony and that the affidavit was "untrustworthy and inherently unreliable."  Griffin sought leave to appeal the decision in the Appellate Division, but his submission was rejected because certain papers were missing.  Griffin twice moved for extensions to re-submit his application for appeal, which was ultimately denied on October 18, 2019.

Griffin filed the instant *pro se* Petition for a Writ of Habeas Corpus on November 30, 2019.  Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A).  Briefing is complete, and the Petition is now before the undersigned judge for adjudication.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Griffin argues that: 1) the trial court erred in refusing to sever the charges involving the home invasion from the other counts; 2) his statement to law enforcement was involuntarily made due to "police deception;" 3) the court improperly allowed evidence that his co-defendants raped his estranged wife; 4) the evidence presented was insufficient to sustain his convictions, and the verdict was against the weight of the evidence; 5) trial counsel was ineffective for failing to properly advise him as to an offered plea bargain; 6) the prosecutor committed misconduct by "[i]mproper averment during voir dire of third panel of jurors" and procuring false evidence and testimony at trial; 7) newly-discovered  evidence in the form of a recantation by a jailhouse informant demonstrates his actual innocence; 8) his

5

sentence is harsh and excessive; and 9) his right to due process was violated by "egregious conduct committed during trial." Griffin also seeks an evidentiary hearing as to all claims.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary

6

authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona*, 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed

to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28

U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

**A.    Timeliness**

Respondent urges the Court to dismiss Griffin's Petition as untimely.  The AEDPA

provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Here, the New York Court of Appeals denied Griffin's application for leave to appeal his

conviction on July 28, 2014.  His conviction became final 90 days later, on October 27, 2014, the

conclusion of the period during which Griffin could have sought certiorari review in the United

States Supreme Court.  *See Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001).  It appears

that he filed his CPL § 440.10 motion to vacate on September 2, 2015, after 309 days had lapsed

on the one-year limitations period.  The limitations period was tolled from September 2, 2015,

until at least July 25, 2019, when the county court denied his § 440.10 motion.  28 U.S.C.

§ 2244(d)(1)(D)(2).  Respondent argues that further tolling is not available to Griffin because he

never filed a leave application that the Appellate Division accepted for filing.  Consequently,

Respondent argues that, as of September 13, 2019, when the deadline for Griffin to file a leave

application expired, only 56 days remained in the limitations period, which thus would expire on

November 8, 2019.  Because Griffin did not file the instant Petition until November 30, 2019,[4]

Respondent argues that the Petition is at least 22 days late.

      In his Traverse, Griffin does not dispute the factual accuracy of Respondent's statements.

Although the statutory limitations period under the AEDPA may be tolled for equitable reasons,

*Holland v. Florida*, 560 U.S. 631, 645 (2010), Griffin does not state any facts in his Traverse

that would render equitable tolling appropriate here.  He does, however, assert in the Petition

that he is actually innocent of the crimes, which, if true, may overcome the Petition's facial

untimeliness. *McQuiggin v. Perkins*, 569 U.S. 383, (2012) (citing *Schlup v. Delo*, 513 U.S. 298

(1995).  But as discussed with respect to Griffin's actual innocence claim, Ground 7, *infra*, the

evidence he submits in support is insufficient to establish his factual innocence.  Accordingly,

while this Court is not unmindful of the plight of unrepresented state prisoners in federal habeas

proceedings, the Court must conclude that Griffin's Petition is facially untimely, and Griffin fails

to satisfy the very high threshold required to overcome that untimeliness.

---

    [4]     Griffin is entitled to the benefit of the prison mailbox rule, an equitable rule
"justified by the litigant's dependence on the prison mail system and lack of counsel to assure
timely filing with the court."  *Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001) (citing *Houston v.
Lack*, 487 U.S. 266, 270-71 (1988)).  Under that rule, the instant *pro se* Petition is deemed filed
on the date that Griffin gave it to the prison authorities for mailing, not on the date it was
docketed in the Court.  *See Houston*, 487 U.S. at 270-72.

**B.      Merits**

Moreover, even if the instant Petition were not time-barred, Griffin is not entitled to relief

on them.  For the reasons discussed below, the Court alternatively concludes that Griffin's

claims are without merit.

**Ground 1.**      *Wrongful Joinder*

Griffin first argues that the trial court erred in refusing to sever the burglary-related

counts from the other counts.  According to Griffin, the counts relating to the order of protection

and drug possession should have been severed from the robbery and burglary counts because the

burglary occurred a month after the other crimes and the inclusion of those counts resulted in

"spillover prejudice."  In considering this claim on direct appeal, the Appellate Division

concluded that "the counts were properly joined pursuant to CPL 200.20(2)(b), and thus the

court 'lacked statutory authority to grant [his severance] motion.'"  *Griffin*, 975 N.Y.S.2d at 308

(citation omitted).

Griffin fares no better on federal habeas review.  CPL § 200.20(2)(b) provides that two

offenses are "joinable" when, "[e]ven though based upon different criminal transactions, such

offenses, or the criminal transactions underlying them, are of such nature that either proof of the

first offense would be material and admissible as evidence in chief upon a trial of the second, or

proof of the second would be material and admissible as evidence in chief upon a trial of the

first."  N.Y. CRIM. PROC. LAW § 200.20(2)(b).  As an initial matter, to the extent Griffin alleges

that the trial court erred under CPL § 200.20(2)(b) when it refused to sever the counts, such

claim is not cognizable on federal habeas review because it implicates only the proper

application of state law.  *See Swarthout*, 131 S. Ct. at 863; *Estelle*, 502 U.S. at 67-68.  In general,

"[j]oinder and severance are questions left to the discretion of the trial judge; no constitutional question is involved." *Madden v. Fogg*, 501 F.Supp. 243, 246 (S.D.N.Y. 1980).

To elevate a joinder issue to one of constitutional magnitude, a petitioner must show that the denial of severance rendered his trial fundamentally unfair and hence violative of due process. *See, e.g.*, *Herring v. Meachum*, 11 F.3d 374, 377 (2d Cir. 1993). A habeas petitioner claiming a due process violation based upon joinder of offenses "must, to succeed, go beyond the potential for prejudice and prove that *actual* prejudice resulted from the events as they unfolded during . . . trial." *Id.* at 377-78. "Substantial prejudice does not simply mean a better chance of acquittal." *United States v. Alvarado*, 882 F.2d 645, 655 (2d Cir. 1989), *overruled on other grounds by Bailey v. United States*, 516 U.S. 137 (1995). Indeed, the Second Circuit has commented that a lower court's determination that joinder does not present a risk of prejudice is "virtually unreviewable." *See United States v. Stewart*, 433 F.3d 273, 314-315 (2d Cir. 2006).

Here, Griffin cannot show the level of substantial prejudice required to warrant habeas relief. In his Petition and on direct appeal, Griffin summarily states that the joinder resulted in "spillover prejudice." According to Griffin, when the jury found him guilty of the home invasion, it likely "conclude[d] that if [he] committed one set of crimes, that he was deserving of punishment and probably committed the other set of crimes." But such conclusory and speculative contention falls far short of his "onerous burden," *Herring*, 11 F.3d at 378, of establishing that his trial was rendered fundamentally unfair by the joinder. Griffin does not contend that his defenses to the crime were antagonistic or that he wished to testify with respect to some counts but not others. Griffin is therefore not entitled to relief on this ground.

11

**Ground 2.**   *Involuntary Statement*

Griffin next contends that the trial court should have suppressed a statement he made to law enforcement admitting drug possession on the ground that the statement was involuntary due to the officer's deception and alleged threat to arrest CW and take Griffin's child if he refused to cooperate.  As an initial matter, Respondent correctly points out that the claim is procedurally barred from federal habeas review.  "[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim." *Harris*, 489 U.S. at 262.  In rejecting Griffin's claim on direct appeal, the Appellate Division found that Gonzales failed to preserve his contention for appellate review.  *Griffin*, 975 N.Y.S.2d at 308.  The Appellate Division relied upon CPL §§ 330.30(1) and 470.05(2), New York's contemporaneous objection rule, which "provides that, with a few exceptions . . . New York appellate courts will review only those errors of law that are presented at a time and in a manner that reasonably prompted a judge to correct them during criminal proceedings," *Downs v. Lape*, 657 F.3d 97, 103 (2d Cir. 2011).  The record reflects that, as the Appellate Division noted, Griffin did not seek to reopen the *Huntley* hearing based on the trial testimony or move for a mistrial.  *Griffin*, 975 N.Y.S.2d at 308.

New York's contemporaneous objection rule has long been considered an "adequate and independent ground" that bars federal habeas review.  *See Whitley v. Ercole*, 642 F.3d 278, 292 (2d Cir. 2011); *see also Downs*, 657 F.3d at 102-04.  As the record supports the Appellate Division's conclusion that Griffin failed to raise his challenge before the trial court, the Appellate Division properly applied CPL § 470.05(2), and Griffin's claim is subject to dismissal on that basis.

12

In any event, even if the claim were properly before this Court, Griffin would not be entitled to relief on the merits of it. The Supreme Court has held that an individual subjected to custodial interrogation by law enforcement personnel "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda*, 384 U.S. at 479. A custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444. The safeguards ensured by *Miranda* do not apply at all times, however. Spontaneous statements made by a defendant are not the product of an interrogation as defined by *Miranda*. *United States v. Vigo*, 487 F.2d 295, 300 (2d Cir. 1973); *see also United States v. Colon*, 835 F.2d 27, 28 (2d Cir. 1987) (*Miranda* inapplicable where the inculpatory statement is spontaneous and did not result from interrogation or its functional equivalent). Moreover, a person may validly waive his right to remain silent after receiving and understanding his *Miranda* rights. *Berghuis v. Thompkins*, 560 U.S. 370, 385-86 (2010).

Griffin argues that law enforcement "exert[ed] improper influence" to induce the statement by "threatening [Griffin] with arresting his wife and taking his child." Although threats by law enforcement may render a confession inadmissible, *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963), after conducting a *Huntley* hearing, the suppression court concluded, "[T]he record of this hearing does not disclose that [Griffin] was either physically or emotionally mistreated during this interview or that the police used threats, promises, physical force or any other form of coercion or trickery," ECF No. 17-3 at 185. The trial court's determination was

based on the testimony of Investigator Gallup, which county court credited, and this Court may

not second guess that assessment. *See Shabazz v. Artuz*, 336 F.3d 154, 161 (2d Cir. 2003)

("Th[e] presumption of correctness [afforded a state court's factual determinations] is

particularly important when reviewing the trial court's assessment of witness credibility.").

Because the state court's factual finding was not unreasonable in light of the evidence before it,

that finding is entitled to deference.  28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 340.  Griffin

does not provide evidence sufficient to rebut the presumption of correctness this Court must

afford the state court's decision.

Notably, county court recognized that Gallup candidly admitted during the hearing that

he had made a false statement about the police having Griffin under surveillance.  The county

court concluded that Gallup's false statement "did not constitute a misrepresentation that could

induce a false confession."[5]  Docket No. 17-1 at 185.

The Second Circuit has held that "a finding that police conduct is 'false, misleading, or

intended to trick and cajole the defendant into confessing' does not necessarily render the

confession involuntary." *United States v. Haak*, 884 F.3d 400, 409 (2d Cir. 2018) (quoting

*United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991)).  The Second Circuit has instructed:

---

[5]      Investigator Gallup subsequently testified at trial that he also told Griffin that his
fingerprints were on the drugs, after which, Griffin admitted that he had received the drugs from
an associate.  Respondent concedes in its Answer to the Petition that Investigator Gallup's
statement about the fingerprints was false.  Ultimately, however, that false statement does not
render unreasonable the state court's determination that Griffin's confession was voluntary for
the same reasons discussed *infra* with respect to the false statement about surveillance.  *See also*
*Frazier v. Cupp*, 394 U.S. 731, 739 (1969) (holding that police misrepresentation that associate
had already confessed to crime, "while relevant, [was] insufficient . . . to make [petitioner's]
otherwise voluntary confession inadmissible").

A court must still make "specific findings . . . that under the totality of the circumstances . . . the defendant's will was overborne by the [police] conduct." [*Anderson*, 929 F.2d at 99]; *see United States v. Corbett*, 750 F.3d 245, 253 (2d Cir. 2014) (identifying "key" question to voluntariness is "whether the subject's will was overborne" (internal quotation marks omitted)). Such circumstances generally fall into "three sets of circumstances: (1) the characteristics of the accused, (2) the conditions of interrogation, and (3) the conduct of law enforcement officials." *Green v. Scully*, 850 F.2d 894, 901-02 (2d Cir. 1988); *see United States v. Orlandez–Gamboa*, 320 F.3d 328, 332 (2d Cir. 2003) (observing that, whether voluntariness requirement derives from Due Process Clause or Fifth Amendment right against self-incrimination, "test for voluntariness is well established and multi-faceted").

*Id.*

Under those principals, the state court's voluntariness determination is reasonable in light of the totality of circumstances, which reflects that, even after Griffin admitted that an associate had given him the drugs, he continued to deny that he had hidden the drugs in his truck, instead accusing the police or his wife of planting the drugs. His continued denial as to that fact supports that the false statements were not unduly coercive. Moreover, Investigator Gallup's testimony at the *Huntley* hearing, which the suppression court credited as truthful, reflected that Griffin was questioned in a casual manner while he was un-handcuffed, and he made his statement after being given his *Miranda* warnings. Gallup testified that he was not trying to induce a confession from Griffin, but rather was encouraging his cooperation and hoping that Griffin would give the name of his supplier and possibly serve as a confidential informant. In light of the of the totality of circumstances, the Court cannot find unreasonable the state courts' determination that Griffin's will was not overborne by Investigator Gallup's conduct.

**Ground 3.** *Evidentiary Error*

Griffin additionally avers that the trial court erred by admitting evidence that his co-conspirators raped CW. The Appellate Division rejected this claim on direct appeal, concluding

that CW's testimony concerning the uncharged crimes of rape and sexual assault were

admissible "'as background material that completed the narrative of the episode,' and the court

properly instructed the jury that the testimony was admitted for that limited purpose." *Griffin*,

975 N.Y.S.2d at 308 (citation omitted).

Under New York law*,* evidence of prior crimes or bad acts may be admitted for the

purpose of showing, *e.g.*, 1) motive, 2) intent, 3) absence of mistake or accident, 4) common

scheme or plan, or (5) identity, as long as its probative value outweighs the prejudicial effect.

*People v. Molineux*, 61 N.E. 286, 293 (N.Y. 1901) (setting out the rule that evidence of prior bad

acts cannot be used to prove that the defendant has a propensity to commit such acts, but may be

used for other purposes).[6]  This evidence is also admissible to serve as background information

or to complete the narrative of the events.  *See People v. Dennis*, 937 N.Y.S.2d 496, 498 (N.Y.

App. Div. 2012).

To the extent that Griffin contends that the trial court's ruling was contrary to *Molineux*,[7]

such claim presents solely an issue of state law that is not cognizable on federal habeas review.

*See, e.g., Mercedes v. McGuire*, No. 08-CV-299, 2010 WL 1936227, at *8 (E.D.N.Y. May 12,

---

[6]      *Cf.* FED. R. EVID. 404(b) ((1)" Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. . . . (2) This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").

[7]      *People v. Molineux*, 61 N.E. 286 (N.Y. 1901) (sets out the rule that evidence of prior bad acts cannot be used to prove that the defendant has a propensity to commit such acts, but may be used for certain other purposes); *cf.* FED. R. EVID. 404(b) ((1) "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character . . . .  (2) This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").

2010) (Appellate Division's rejection of petitioner's claim that the use of uncharged crimes violated his due process rights was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent because "the Supreme Court has never held that a criminal defendant's due process rights are violated by the introduction of prior bad acts or uncharged crimes."); *Allaway v. McGinnis*, 301 F. Supp. 2d 297, 300 (S.D.N.Y. 2004) (the Supreme Court has yet to clearly establish "when the admission of evidence of prior crimes under state evidentiary laws can constitute a federal due process violation").

   In any event, even if it were cognizable on federal habeas review, Griffin would not be entitled to relief on it.  Again, with respect to the admission of prior bad acts to show a defendant's propensity to commit the charged crimes—which did not occur here—there is no clearly established federal law finding a due process violation.  *See Estelle*, 502 U.S. at 75 n. 5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime.").  Nevertheless, the erroneous admission of evidence will rise to a deprivation of due process under the Fourteenth Amendment if the evidence in question, when evaluated in the context of the record as a whole, is "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would otherwise have existed on the record without it." *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 73 (2d Cir. 2011) (quoting *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir.1985)). "In short it must have been crucial, critical, [or] highly significant." *Id.*

   Here, Griffin has not established that the challenged sexual offense evidence amounted to an evidentiary error so serious as to have denied him a fundamentally fair trial. *See Vega v.*

*Walsh*, 669 F.3d 123, 126 (2d Cir. 2012).  The evidence of uncharged crimes was not

"sufficiently material to provide the basis for [Griffin's] conviction," nor did this evidence

"remove a reasonable doubt that would have existed . . . without it."  *McKinnon*, 422 F. App'x at

73.  The trial court instructed the jury at the beginning of trial that Griffin was not charged with

these sex offenses.  Upon defense objection to the prosecutor's reference to the sex crimes

during her opening statement, the court instructed the jury that "there is no charge in this

indictment charging [Griffin] with having committed that—those particular crimes . . . . Mr.

Griffin is not charged with a rape or a criminal sex act . . . ."  Viewing the evidence of the

uncharged crimes in light of the entirety of the record, the Appellate Division's denial of

Griffin's due process claim was not contrary to or an unreasonable application of clearly

established Supreme Court precedent.

**Ground 4.**     *Insufficiency of the Evidence/Against the Weight of the Evidence*

Griffin claims in Ground 4 that the menacing and robbery-related convictions were

against the weight of the evidence, and that the evidence presented was legally insufficient to

sustain those convictions.[8]  As an initial matter, claims that challenge verdicts as against the

weight of the evidence are not cognizable on federal habeas review.  *See McKinnon*, 422 F.

App'x at 75.  "Unlike a sufficiency of the evidence claim, which is based upon federal due

process principles, a weight of the evidence claim is an error of state law, for which habeas

---

[8]      On direct appeal, the Appellate Division agreed that his convictions for third-
degree criminal possession of a weapon and second-degree intimidating a victim or witness were
not supported by legally sufficient evidence.  *Griffin*, 975 N.Y.S.2d at 308.  The Appellate
Division recognized that Griffin failed to preserve that claim for appeal but nonetheless
exercised its power to review it in the interest of justice, and modified the judgment accordingly.
*Id*.

review is not available." *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (citation and internal quotation marks omitted). "A weight of the evidence argument is a pure state law claim grounded in [CPL] § 470.15(5) which empowers New York state intermediate appellate court[s] to make weight of the evidence determinations." *Id.* (citation and internal quotation marks omitted). The Court therefore also denies Scott's weight of the evidence claim on that basis.

Griffin's insufficiency of the evidence claim, although cognizable on federal habeas review, is also without merit. As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the New York court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the

Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law.  *Jackson*, 443 U.S. at 324 n.16.  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

In support of his claim, Griffin attacks the value of the evidence against him, arguing that the prosecution presented insufficient evidence connecting him to the home invasion-related crimes and insufficient evidence that his actions satisfied the elements of the crime of menacing.  This Court, however, is precluded from either re-weighing the evidence or assessing the credibility of witnesses.  *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal" and deferring to the jury's assessments of the particular weight to be accorded to the evidence and the credibility of witnesses).  Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction.  *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).

With respect to the home invasion counts, the prosecution presented vast amounts of telephone records, which corroborated the accomplice testimony of Aimee Brown, who also implicated Griffin in the commissioning of the home invasion.  CW's testimony that she was scared when Griffin threatened to kill her and pushed her face into a mattress amply supports Griffin's menacing conviction.  Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution.  *See Jackson*, 443 U.S. at 326.  The record does not compel the conclusion that no rational trier of fact could have found proof that Griffin was guilty of the home invasion and menacing crimes, especially considering the double deference owed under *Jackson* and the AEDPA.  Griffin therefore cannot prevail on his insufficiency of the evidence claim either.

**Ground 5.**   *Ineffective Assistance of Counsel*

Griffin also argues that trial counsel was ineffective for failing to adequately advise him as to the "pros and cons of accepting a plea offer."  To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*  The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Thus, Griffin must show that his counsel's representation was not within the range of competence demanded of attorneys in

criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id*. (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840

N.E.2d at 126.  "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)).  The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard.  *Id.* at 124, 126.  The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard.  *Id.* at 125.

Griffin's ineffective assistance claims must fail, however, even under the more favorable New York standard.  Respondent first argues that Griffin has failed to exhaust this ineffective assistance claim.  This Court may not consider claims that have not been fairly presented to the state courts.  28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).  Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.  *Duncan v. Henry*, 513 U.S. 364, 365 (1995).  A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim.  *Id.* at 365-66.  An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used.  *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005).  To be deemed exhausted, a claim must also have been presented to the highest state court that may consider the issue presented.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her

conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). Further, "when a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 2001).

Here, Griffin raised three ineffective assistance claims on direct appeal.[9] The only claim that, like the claim in this Petition, relates to plea negotiations is his direct appeal claim that counsel did not discuss with Griffin "the proper sentencing parameters" Griffin faced. But that claim is substantively different than the claim here that counsel "[f]ail[ed] to advise the pros and cons of accepting a plea offer." Consequently, the instant claim is wholly unexhausted and subject to dismissal on that ground.

It appears, however, that the claim may be based on matters outside the record, and thus Griffin potentially could still file a *coram nobis* motion in the Appellate Division on that ground, rendering it not procedurally defaulted. But even if Griffin could still exhaust this claim in state court, the Court declines to stay the Petition and allow him to return to state court to satisfy the exhaustion requirements. *See Zarvela v. Artuz*, 254 F.3d 374, 380-83 (2d Cir. 2001). Griffin

---

[9]       Griffin argued that counsel was ineffective for failing to: 1) provide proper advice regarding his sentence exposure; 2) review Investigator Gallup's July 24, 2009, interview before trial; and 3) move to reopen the suppression hearing or move to suppress his June 19, 2009, statements to Investigator Gallup based on Gallup's trial testimony acknowledging that he falsely told Griffin that Griffin's fingerprints were on the drugs. Griffin does not re-assert any of these claims in the instant Petition.

has not requested that this Court stay and hold his Petition in abeyance.  Moreover, the Supreme Court has held that it is an abuse of discretion to stay a mixed petition pending exhaustion where: 1) the petitioner has not shown good cause for failing to exhaust all available state court remedies; and 2) the unexhausted claim is "plainly meritless."  *Rhines v. Weber*, 544 U.S. 269, 277 (2005).

Despite Griffin's failure to exhaust his ineffective assistance claim, this Court nonetheless may deny his claims on the merits and with prejudice.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  This is particularly true where the ground raised is meritless.  *See Rhines*, 544 U.S. at 277.

Although a defendant's Sixth Amendment right to counsel extends to plea negotiations, *see Padilla v. Kentucky*, 559 U.S. 356, 364 (2010) ("Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" (citations omitted)), the record does not indicate that Griffin was deprived of competent counsel.  Griffin provides nothing more than his unsupported and conclusory statement that counsel failed to adequately discuss the offered plea with him.[10]  This lack of evidentiary support is fatal to his claim. *Woodford v. Visciotti*, 537 U.S. 19, 15 (2002) (*per curiam*) (holding that state habeas petitioner carries the burden of proof); *see, e.g.*, *Powers v. Lord*, 462 F. Supp. 2d 371, 381-82 (W.D.N.Y. 2006) (laying out the general rule that "undetailed and unsubstantiated assertions [about

---

[10]     Indeed, the record reflects that the trial court recessed the proceedings to give defense counsel time to discuss the plea offer with Griffin.  Although the substance of those discussion were not placed on the record, Griffin fails to establish any reasonable probability that defense counsel failed to discuss the "pros and cons" of the offer at that time.

counsel's alleged shortcomings] have consistently been held insufficient to satisfy either *Strickland* prong" (citation omitted)).   "It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief."  *See Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 355 (N.D.N.Y. 2013). As such, a claim of ineffective assistance must contain specific factual contentions regarding how counsel was ineffective.  *See Hall v. Phillips*, No. 1:04-CV-1514, 2007 WL 2156656, at *13 (E.D.N.Y. July 25, 2007) (the absence of allegations that demonstrate how counsel was ineffective is "fatal to an ineffective assistance claim on habeas" review).   Consequently, Griffin is not entitled to relief on his ineffective assistance claim in any event.

**Ground 6.**   *Prosecutorial Misconduct*

Griffin additionally contends that the prosecutor committed misconduct by: 1) improperly asking a potential juror regarding the prosecutor's decision not to call CW's child to testify; and 2) presenting "false evidence and testimony" at trial.

Federal habeas review of prosecutorial misconduct claims is limited to the narrow issue of whether the alleged misconduct violated due process.  *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Id.* at 171 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial."  *Greer v. Miller*, 485 U.S. 756, 765 (1987) (quoting *United States v. Bagley*, 473 U.S. 667 (1985)).  Under this standard, a petitioner must show there is a reasonable probability the error complained of

affected the outcome of the trial—i.e., that absent the alleged impropriety, the verdict probably would have been different.

Griffin first contends that the prosecutor improperly asked a jury panel about the prosecutor's decision not to call CW's child as a trial witness.  Griffin raised this claim on direct appeal, asserting that the prosecutor's inquiry improperly vouched for the veracity of the People's version of events.  The Appellate Division summarily denied the claim.  *See Griffin*, 975 N.Y.S.2d at 309 ("We have reviewed [Griffin's] remaining contentions and conclude that they are without merit.").

It is well-established that "[a]ttorney statements vouching for the credibility of witnesses are generally improper because they imply the existence of" evidence not before the jury. *United States v. Perez*, 144 F.3d 204, 210 (2d Cir. 1998) (quoting *United States v. Rivera*, 22 F.3d 430, 438 (2d Cir. 1994)).  Prosecutorial "vouching," in particular, is improper because it "carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence."  *United States v. Newton*, 369 F.3d 659, 681 (2d Cir. 2004) (quoting *United States v. Young*, 470 U.S. 1, 18-19 (1985)).

But Griffin fails to show that improper vouching occurred here.  The record reflects that the prosecutor informed the jury panel that CW's daughter could have been called as an eyewitness but that the People had decided not to call her due to the trauma she experienced. The People then asked if any potential jurors would hold it against the People if she were not called.  Although the prosecutor stated that the daughter "would have some evidence for you," the prosecutor did not describe what that evidence would have been.  To the extent the inquiry conveyed that the daughter was traumatized by that experience, that conclusion was supported

by the trial proof.  Moreover, the trial court prohibited any further inquiry and immediately instructed the jury that what the lawyers say during voir dire is not evidence.  Under these circumstances, the Appellate Division's rejection of this claim was neither unreasonable nor contrary to federal law.

Griffin additionally argues that the prosecution committed misconduct by eliciting perjury and relying on false evidence.  Again, to be deemed exhausted, a claim must have been presented to the highest state court that may consider the issue presented.  *See O'Sullivan*, 526 U.S. at 845.  Because Griffin did not properly appeal the denial of his § 440.10 motion, this prosecutorial misconduct claim is unexhausted.  Further, "when a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted."  *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 2001).  Because it appears that this unexhausted claim is based on the record, it could have been fully raised on direct appeal but was not; consequently, Griffin cannot bring a motion to vacate as to such claim.  N.Y. CRIM. PROC. LAW § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when[,][a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal . . . .").  Accordingly, the claim may be deemed exhausted but procedurally defaulted. *Clark*, 510 F.3d at 390; *Grey*, 933 F.2d at 121.

In any event, Griffin cannot prevail on the merits of the claim either.  In *Napue v. Illinois*, 360 U.S. 264, 269 (1959), the Supreme Court held "that 'a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment.'"  *Jenkins v. Artuz*, 294 F.3d 284, 292 (2d Cir. 2002) (alteration omitted) (quoting *Napue*, 360 U.S. at 269).  "The threshold question is whether the evidence presented was false." *Black v. Rock*, 103 F. Supp. 3d 305, 317 (E.D.N.Y. 2015) (citing *McCants v. Hallenback*, No. 13-CV-5587, 2014 WL 4638836, at *6 (E.D.N.Y. Sept. 16, 2014) ).  "With respect to perjured testimony, this requires a showing that the witness gave 'false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory.'"  *Id.* (quoting *McCants*, 2014 WL 4638836, at *6).  "The petitioner has the burden of demonstrating, by a preponderance of the evidence, that the witness committed perjury."  *Id.* (internal quotation marks and citation omitted). If the evidence is false or the witness committed perjury, "a conviction must be set aside if 'the prosecution knew, or should have known, of the perjury,' and 'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *Smith v. Herbert*, 275 F. Supp. 2d 361, 367 (E.D.N.Y. 2003) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)).

All of the instances cited by Griffin fail on the threshold question of veracity.  Griffin first cites a letter purportedly written by Justin White that claims the author overheard a conversation between co-defendant Kelley and Aimee Burton said they were going to get rich and that they were no longer friends with Griffin.  In considering this evidence on § 440.10 review, the county court found under "the totality of the circumstances" that the letter was

"untrustworthy and inherently unreliable." Similarly, Griffin next refers to a 2012 affidavit by Robert Thomas in which he purports to recant his trial testimony regarding a conversation he overheard the night before the home invasion. The county court concluded that this affidavit was likely "inherently unreliable," particularly given that Thomas's trial testimony was corroborated by phone records. In short, Griffin provides no reliable evidence that would rebut the presumption of correctness this Court must afford the state court's factual determination. *See* 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 340.

Finally, Griffin claims that Autumn Vanderzee wrote him a letter admitting that she lied at trial. Griffin does not submit that letter but rather submits an affidavit from his mother saying that she saw the letter but misplaced it. On CPL § 440.10 review, the county court found the mother's affidavit of insufficient evidentiary value to establish that the People deliberately elicited false testimony from Vanderzee, or that Vanderzee in fact lied at trial. Griffin provides no stronger evidentiary support here, and therefore the state courts' rejection of this claim is both reasonable and fully supported by the record. In sum, Griffin is not entitled to relief on any argument advanced in support of his prosecutorial misconduct claim.

**Ground 7.** *Newly-Discovered Evidence*

Griffin further asserts that newly-discovered evidence demonstrates his actual innocence. While a federal habeas petitioner may assert a claim of actual innocence to overcome a procedural bar to review, *Schlup*, 513 U.S. at 326, or to overcome the AEDPA's one-year statute of limitations, *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013), the Supreme Court has not resolved whether a non-capital prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence, *McQuiggin*, 133 S.Ct. at 1931; *see House v. Bell*, 547 U.S. 518, 554-

55 (2006); *Dist. Attorney's Office v. Osborne*, 557 U.S. 52, 71-72 (2009).  The Supreme Court

has instead declined to answer the question, noting that where a "[p]etitioner has failed to make a

persuasive showing of actual innocence[,] . . . the Court has no reason to pass on, and

appropriately reserves, the question whether federal courts may entertain convincing claims of

actual innocence." *Herrera v. Collins*, 506 U.S. 390, 427 (1993) (O'Connor, J., concurring).

Although the Second Circuit has also not ruled on whether a claim of actual innocence is

cognizable on habeas review, *see Friedman v. Rehal*, 618 F.3d 142, 159 (2d Cir. 2010) (citing

*Osborne*, 557 U.S. at 71, and noting that whether an actual innocence claim is cognizable is an

open question), it has "come close" to granting habeas relief on grounds of actual innocence, *see*

*DiMattina v. United States*, 949 F. Supp. 2d 387, 417 (E.D.N.Y. 2013) (citing cases).

      Assuming, but not deciding, that a freestanding actual innocence claim is cognizable in a

§ 2254 proceeding, the Supreme Court has described the threshold showing of evidence as

"extraordinarily high." *Herrera*, 506 U.S. at 417.  "The sequence of the Court's decisions in

*Herrara* and *Schlup*—first leaving unresolved the status of freestanding claims and then

establishing the gateway standard—implies at the least that *Herrara* requires more convincing

proof of innocence than *Schlup*." *House*, 547 U.S. at 555.

      Measured against this standard, Griffin has fallen short of establishing his actual

innocence.  Griffin's claim is based on the purported recantations of White, Thomas, and

Vanderzee, which he contends constitute newly discovered evidence.  The Second Circuit has

recognized that "due process is violated if a state leaves in place a criminal conviction after a

credible recantation of material testimony and the recantation would 'most likely' have changed

the outcome." *Quezada v. Smith*, 624 F.3d 514, 521 (2d Cir. 2010) (citing *Sanders v. Sullivan*,

863 F.2d 218, 222 (2d Cir. 1988)).  However, "[i]t is axiomatic that witness recantations 'must

be looked upon with utmost suspicion.'"  *Haouari v. United States*, 510 F.3d 350, 353 (2d Cir.

2007) (quoting *Ortega v. Duncan*, 333 F.3d 102, 107 (2d Cir. 2003)).  This rule exists because

recantations upset society's interest in the finality of convictions and are very often unreliable

and given for suspect reasons.  *Id.*  The presumption of correctness afforded to state-court

findings on federal habeas review applies to "historical facts, that is, recitals of external events

and the credibility of the witnesses narrating them."  *Smith v. Mann*, 173 F.3d 73, 76 (2d Cir.

1999).  Those findings will be overturned if the material facts were not adequately developed by

the state court or if the factual determination is not adequately supported by the record.  *Id.*

In this case, the state court fully developed the material facts on CPL § 440.10 review,

and the record supports the county court's factual findings, as discussed in Ground 6, *supra*.

Thus, no basis exists to overturn the state court's findings as to White, Thomas, or Vanderzee's

testimony, and none of the alleged recantations support a claim of actual innocence here.

Accordingly, Griffin is not entitled to relief on this ground.

**Ground 8.**    *Harsh and Excessive Sentence*

Griffin also argues that his sentence is excessive, and the trial court failed to consider his

particular needs when imposing that sentence.  It is well-settled, however, that an excessive

sentence claim may not be raised as grounds for federal habeas corpus relief if the sentence is

within the range prescribed by state law.  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992);

*Bellavia v. Fogg*, 613 F.2d 369, 373 (2d Cir. 1979) (setting mandatory sentences is solely the

province of state legislature); *Hernandez v. Conway*, 485 F. Supp. 2d 266, 284 (W.D.N.Y. 2007)

(excessive sentence claim does not present a federal question cognizable on habeas review where

the sentence was within the range prescribed by state law).  Griffin has never disputed, and does not dispute here, that he was sentenced within the applicable range for his offenses.

And to the extent that Griffin's claim could be construed to assert an Eighth Amendment claim of cruel and unusual punishment, he cannot prevail on that claim either.  While the Supreme Court has stated that "[a] gross disproportionality principle is applicable to sentences for terms of years," it has further cautioned that it would be the "exceedingly rare" and "extreme" case which would involve a sentence which is "contrary to" or an "unreasonable application of" this principle.  *Lockyer v. Andrade*, 538 U.S. 63, 72, 73 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in judgment)); 28 U.S.C. § 2254(d)(1).  "'[A] reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate' because 'the decision of a sentencing [court] is entitled to substantial deference.'"  *Edwards v. Marshall*, 589 F. Supp. 2d 276, 290 (S.D.N.Y. 2008) (quoting *United States v. Persico*, 853 F.2d 134, 138 (2d Cir. 1988)).  Here, the 50-year aggregate sentence imposed by the trial court and subsequently affirmed by the Appellate Division "does not remotely approach the realm of grossly disproportionate punishments."  *Edwards*, 589 F. Supp. 2d at 291 n.11; *see Lockyer*, 538 U.S. at 67-68, 77 (finding that, under California's Three Strikes law, a sentence of two consecutive terms of 25 years to life imprisonment for two counts of petty theft did not warrant relief under the AEDPA); *Rummel v. Estelle*, 445 U.S. 263, 285 (1980) (mandatory life sentence imposed under Texas statute upon defendant's third felony conviction, which was for obtaining $120.75 by false pretenses, did not constitute cruel and unusual

punishment).  Accordingly, this Court is without jurisdiction to reduce his lawful state sentence.

**Ground 9.**   *Due Process Violation*

Finally, Griffin claims that his trial was unfair due to "egregious conduct."  But this bare and conclusory allegation is manifestly insufficient to warrant federal habeas relief.  *See Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 355 (N.D.N.Y. 2013) ("It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief.").  Construing Griffin's *pro se* claim liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), Griffin may be arguing, as he did on direct appeal, that the cumulative effect of the errors alleged above warrants reversal of his conviction.

"In limited circumstances, cumulative errors may "serve as the basis for habeas corpus relief."  *Brumfield v. Stinson*, 297 F. Supp. 2d 607, 621 (W.D.N.Y. 2003) (citation omitted).  In order for a federal habeas court to find that cumulative errors justify habeas relief, "the alleged individual errors a petitioner seeks to aggregate [must be actual] *errors*."  *Id.* (citing *Joyner v. Miller*, No. 01–Civ.–2157, 2002 WL 1023141, at *13 (S.D.N.Y. Jan. 7, 2002) (collecting cases)).  Further, the petitioner must show that the errors are "'so prejudicial that they rendered petitioner's trial . . . fundamentally unfair.'"  *Id*. (citation omitted).  For the same reasons that the individual errors fail to show fundamental unfairness, the errors viewed cumulatively fail to demonstrate fundamental unfairness, and Griffin cannot prevail on his cumulative error claim either.

**C.      Request for Evidentiary Hearing**

Griffin further requests an evidentiary hearing as to all claims.  The Supreme Court made clear in *Pinholster* that "review under [28 U.S.C.] § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011); *see Townsend v. Sain*, 372 U.S. 293, 312-13, 319 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superceded in part by statute*, 28 U.S.C. 2254(e)(2) (1996).  "Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Williams v. Taylor*, 529 U.S. 420, 437 (2000) (quoted with approval in *Pinholster*, 131 S. Ct. at 1401); *see Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (noting that the basic structure of federal habeas jurisdiction is designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions); *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977) ("[T]he state trial on the merits [should be] the 'main event,' so to speak, rather than a 'tryout on the road' for what will later be the determinative federal habeas hearing.")  "If the state-court decision 'identifies the correct governing legal principle' in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.'"  *Pinholster*, 131 S. Ct. at 1399 (quoting *Williams*, 529 U.S. at 413).  As the Supreme Court noted, "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court."  *Id.*  Although under *Pinholster* an evidentiary hearing in a federal habeas proceeding is not absolutely precluded, *Pinholster* also made clear that the discretion to grant a request for an evidentiary hearing is cabined by § 2254(e)(2), *id.* at 1400-01, which provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>> (A) the claim relies on—
>>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Griffin's request in this case does not meet that standard. Nor, based upon the record before this Court, can it be said that the state courts precluded him from developing the factual basis for his claim. *See Pinholster*, 131 S. Ct. at 1417 n.5 (Sotomayer, J., dissenting) (assuming that the majority did not intend to preclude an evidentiary hearing when the petitioner's ability to develop the facts was the fault of the state court itself). Accordingly, this Court also must deny his request for an evidentiary hearing.

## D.      Certificate of Appealability

Having determined that habeas relief is not warranted, the Court must now consider whether to grant a certificate of appealability, which is required for a party to appeal a district court's decision on a § 2254 petition. *See* Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts; FED. R. APP. P. 22(b)(1). A "certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy the showing required by Section 2253(c)(2), the petitioner must show that reasonable jurists could debate whether the petition should have been resolved differently or that the issues presented are "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Where, as here, a court has

dismissed a petition or claim on procedural grounds, in addition to showing that the petition "states a valid claim of the denial of a constitutional right," as explained above, the petitioner must also show that reasonable jurists would find debatable whether the court was correct in its procedural ruling. *Id.* at 484. This standard "requires an overview of the claims in the habeas petition and a general assessment of their merits," but a court need not determine that the petitioner would prevail on appeal. *Miller–El*, 537 U.S. at 336.

This Court found here that Griffin's coerced confession claim was procedurally barred because the New York Supreme Court deemed the claim unpreserved for appellate review. The Second Circuit has explained, however, that:

> Federal courts may address the merits of a claim that was procedurally defaulted in state court . . . upon a showing of cause for the default and prejudice to the petitioner. *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 2506-07, 53 L. Ed. 2d 594 (1977). Cause may be demonstrated with "a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that 'some interference by state officials' made compliance impracticable, . . . [or that] the procedural default is the result of ineffective assistance of counsel." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986) (citations omitted).

*Bossett v. Walker*, 641 41 F.3d 825, 829 (2d Cir. 1994).

Having reviewed the record thoroughly, the Court concludes that even if a reasonable jurist could find debatable whether Griffin's procedural default should be excused due to appointed counsel's failure to properly raise the coerced confession claim before the trial court by moving to reopen the *Huntley* hearing or moving for a mistrial,[11] the Court also found the

---

[11]    On direct appeal, Griffin alleged that trial counsel was ineffective for failing to listen to the audio of Griffin's interview with investigators before trial and failing to reopen the *Huntley* hearing after Gallup's testimony. The Appellate Division summarily denied that claim. *See Griffin*, 975 N.Y.S.2d at 309 ("We have reviewed [Griffin's] remaining contentions and conclude that they are without merit."). As aforementioned, Griffin does not challenge that determination in the instant Petition.

instant Petition untimely.  With respect to the timeliness issue, the Court must conclude that no reasonable jurist would find debatable untimeliness of Griffin's Petition.  Accordingly, the Court declines to issue a certificate of appealability as to Griffin's claim that his statements to Investigator Gallup were the product of undue coercion, as well as to all other claims.

## V. CONCLUSION

Griffin is not entitled to relief on any ground raised in his Petition, nor is he entitled to an evidentiary hearing.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Request for an Evidentiary Hearing is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: August 31, 2021.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge

38